IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINE SCHOFIELD,<br><br>            Plaintiff,<br><br>v.<br><br>MAVERIK COUNTRY STORE,<br><br>            Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 1:12-CV-114 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Maverik Country Store, Inc.'s ("Maverik")

Motion for Summary Judgment.[1]  For the reasons set forth below, the Court will grant in part

and deny in part Defendant's Motion.

## I.  FACTUAL BACKGROUND

The following facts are either uncontroverted or are viewed in the light most favorable to

Plaintiff as the non-moving party.  Plaintiff Christine Schofield ("Schofield") was hired by

Maverik in August 2006 to be an adventure guide, which is essentially a cashier position.  She

left the position after a short time but returned to the position at a different Maverik store

approximately one year later.  Schofield worked part-time at the Maverik #349 store, typically

working weekends, until she was terminated from the position in April 2010.

Schofield reported to both Rick Coleman ("Coleman"), the store director, and Antony

Fisco ("Fisco"), the operations manager.  The store director is ultimately responsible for the store

and typically is responsible for hiring, firing, and scheduling.  However, the store director often

_____

[1] Docket No. 26.

works closely with the operations manager and many store directors delegate some of these duties to the operations manager. Coleman was out on vacation for over a week in April 2010, although the exact dates he was gone are disputed. When Coleman was gone, Fisco was in charge of the store. In any case, Schofield maintains she worked directly with Fisco in April 2010 to request time off because she believed Coleman was out of town at the time. Neither Fisco nor Schofield was aware of the Family and Medical Leave Act ("FMLA").

A.      CLIMATE

Schofield maintains that the work environment at Maverik Store #349 was hostile. Schofield testified that Coleman told her "to move [her] fat ass" and called her white trash. She also attests that Coleman often made inappropriate comments about women to which Fisco would join in or laugh. Coleman was known to make derogatory statements to women, including calling one employee an "old hag" and telling her to get on her broomstick, telling another female employee that she was old and wore diapers, calling another employee a "slut," and making reference to it smelling like fish while he was near a female employee. Coleman also made comments about preferring to hire all men because women have too much drama and because men were more focused on their work than what was going on at home.

Fisco admits he witnessed Coleman make derogatory comments to and about his employees, including referring to them as "fat ass," "bitch," "ho," "kitchen bitches," and "idiot white trash." Fisco also admits that he witnessed Coleman show employees pornographic emails and text messages, and jokes that degraded women. Schofield testified that she was not aware of these text messages or emails.[2]

_____

[2] Docket No. 34 Ex 4, at 107.

While Schofield indicates that she was uncomfortable with some of the improper comments, she never asked Coleman or Fisco to stop. Schofield admits that she understood the process to report these incidents but indicates that she did not complain about these behaviors herself because she was afraid she would lose her job.

B.    TARDINESS

In August 2006 and again in November 2007 Schofield signed an acknowledgement that a hiring manager reviewed a personnel policy manual with her.[3] The attendance policy, which is part of the personnel policy manual, noted that employees were expected to report to work on time and that excessive tardiness or absences could result in immediate dismissal.[4]

Defendant also enforced a coaching and corrective action policy that contained a progressive discipline system wherein the usual practice was to give verbal feedback, a written warning, and a final written warning before terminating the employee.[5] Defendant's coaching and corrective action policy states that if a problem persists after a written warning, then the employee should be placed on a final written warning, at which point "any additional infractions will result in [the employee's] termination."[6] The policy also states that disciplinary action should take place as soon as possible after the problem occurs and that "[f]ailure to discipline in a timely manner may indicate to the employee that the behavior is condoned."[7]  The policy clearly states that it is not an employment contract and that an employee can be terminated at any

---

[3] Docket No. 27 Ex. Y.

[4] *Id.* Exs. D & F.

[5] Docket No 27 Ex. HH, at 3–4.

[6] *Id.* at 4.

[7] *Id.* at 3.

time "when an employee has engaged in a serious performance deficiency, has committed a serious infraction of policy, engaged in personal conduct that may adversely affect the Company's reputation, or is otherwise deemed to be performing in a clearly unacceptable manner . . . ."[8]  It also states that "the company reserves the right to terminate an employee at any time when, in the opinion of company management, a termination is in the Company's best interest."[9]

Despite the attendance policy, Coleman described Schofield as being "at least 15 minutes late [to] 80% of her scheduled shifts since her hire date."[10]  Fisco similarly described Schofield as "a very, very good worker" who was "regularly" late to work.[11]  Because Schofield was a good worker while at work, management routinely disregarded Schofield's tardiness.[12]  Even so, Schofield was verbally counseled on multiple occasions that she should be on time.  In October 2009, Coleman wrote a letter to all store employees indicating that he had been lax in enforcing policies but that he intended to be stricter going forward.  Still, Schofield reported late to work without consequence.  In February 2010, Schofield received her first written warning for tardiness.  Despite the written warning, Plaintiff continued to report late to work yet suffered no additional write-ups in February or March 2010.

---

[8] *Id.*

[9] *Id.* at 4.

[10] Docket No. 34 Ex. 6, at 1.

[11] *Id.* Ex. 2, at 18.

[12] *See id.* Ex. 6, at 1.

C.      ASSAULT

On April 8, 2010, Schofield was sexually and physically assaulted by her ex-boyfriend. Schofield's sister, Shelly Weber ("Weber"), notified the authorities of the assault and took Schofield to the hospital. Weber also called Maverik and informed Fisco of the assault, noting that Schofield would not be in for her scheduled shifts that weekend. Fisco told Weber "Don't worry, tell Christine when she's ready [to return to work to] let me know."[13] Schofield herself came into the store at some point after the assault and told Fisco she was not sure when she would be able to come back to work.[14] Fisco then informed Coleman of Schofield's injuries and indicated that "she was in pretty bad shape . . . . He beat the hell out of her and sexually assaulted her."[15] Schofield received sick leave for the shifts she missed on April 9–11.[16] It is not clear how, why, or by whom, but Schofield was placed on the schedule to work April 16–18, 2010.

Fisco maintains that he notified Coleman that Schofield was erroneously scheduled to work April 16–18. Fisco testified that Coleman responded:

> It's not our problem. We have a business to run and it's not our problem. And you have other things to attend to other than trying to cover [Schofield's] shifts. She can either come to work or she can find some place else to work. If she doesn't want to work, I'll find somebody who does.[17]

---

[13] *Id.* Ex. 2, at 99.

[14] *Id.* at 110.

[15] *Id.* at 112.

[16] Docket No. 27 Ex. C, at 74.

[17] Docket No. 34 Ex. 2, at 109.

Thereafter, Fisco notified Schofield that she needed to work her scheduled shifts on April 16–18, at which time Schofield acknowledged that while she was still in pain, she would work the scheduled shifts.[18]

D.     TERMINATION

Schofield does not recall whether she reported late for her shifts on April 16–18 but admits that she may have. Defendant has introduced evidence that Schofield reported significantly late for at least two and possibly all three of her shifts on April 16–18.[19]

Schofield came into Maverik on April 22, 2010, to reiterate her desire for additional time off, but before she could do so, Fisco informed her that her employment was being terminated for excessive tardiness and multiple written warnings.[20]

Coleman maintains that he was out of town when Schofield was terminated and that Fisco made the decision to terminate Schofield. Schofield and Fisco testified that Coleman had returned from his out of town vacation and that Coleman made the decision to terminate Plaintiff.

Plaintiff produced evidence that she had not received multiple written warnings for tardiness. She claims she received only one written warning for tardiness, which was from February 2010. Fisco testified that he was instructed after Schofield's termination to create a final written warning, which Schofield did not see or sign, in order to post hoc create proper documentation in Schofield's file to justify her termination.

---

[18] *Id.* at 113, 115.

[19] *Id.* at 136; *see* Docket No. 29 Ex. CC, at 5.

[20] Docket No. 27 Ex. O.

After her termination, Plaintiff filed a charge with the Utah Anti-Discrimination and Labor Division ("UALD") and was issued a Notice of Right to Sue in February 2012. Schofield filed this suit on May 25, 2012.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[22] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[23]

## III. DISCUSSION

Plaintiff's Amended Complaint states three causes of action against Defendant, (1) violation of the FMLA in the form of interference, (2) violation of the FMLA in the form of retaliation, and (3) violations of Title VII. The Court will address the substance of the FMLA claims before turning to the statute of limitations argument and the Title VII claim.

A.     FMLA INTERFERENCE

Plaintiff's first claim is for interference with her FMLA rights. Plaintiff claims that she notified Defendant that she needed medical leave due to injuries sustained after an assault by her ex-boyfriend, yet Defendant failed to notify Plaintiff of her rights and responsibilities under the

---

[21] Fed. R. Civ. P. 56(a).

[22] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[23] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

FMLA and failed to provide her with sufficient leave. Further, Plaintiff argues that Defendant fired her because she requested leave after the assault. Finally, Plaintiff argues that Maverik forged her attendance warning records in order to justify her termination.

"The FMLA makes it unlawful for any covered employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter.'"[24] "To make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with h[er] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of h[er] FMLA rights."[25]

For purposes of summary judgment, Maverik concedes all three elements of the prima facie case, but argues that the claim fails because Schofield suffered no prejudice because of Maverik's purported FMLA interference.[26] Defendant argues that there is no prejudice because it would have terminated Plaintiff for tardiness regardless of her request for leave.

Defendant has provided undisputed evidence that Schofield had a long history of tardiness in violation of Maverik's attendance policy and that she was verbally counseled on multiple occasions to try to be on time. It is also undisputed that Schofield received at least one written warning for her tardiness. Plaintiff, however, provided evidence that Maverik knew about and had acquiesced in her tardiness. Plaintiff also presented evidence that, under Maverik's coaching and corrective action policy, an employee would typically receive at least

---

[24] *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1318 (10th Cir. 2005) (quoting 29 U.S.C. § 2615(a)(1)).

[25] *Id.* at 1319.

[26] Docket No. 26, at 39.

two written warnings before being terminated for tardiness.  She also presented evidence that

Fisco and Coleman both believed that three written warnings were required in order to terminate

Schofield.[27]  Finally, Plaintiff presented evidence that Fisco, at Coleman's request, forged a

written tardiness warning after Schofield was terminated.  From these facts, a jury could

reasonably infer that, had Schofield not requested time off, Maverik would have permitted her to

continue at her job while continuing to be tardy.

Moreover, if Plaintiff were entitled to FMLA and indeed sought FMLA time off—which

are factual issues that are in dispute—she would not have returned to work the week following

her assault.  Because she would not have been at work, she would not have been terminated for

being tardy for her shifts the weekend of April 16–18, 2010.  The Court finds this to be sufficient

evidence of prejudice and therefore cannot grant summary judgment on Plaintiff's interference

claim.

B.      FMLA RETALIATION

Plaintiff next alleges FMLA retaliation.  Defendant argues that summary judgment is

appropriate on this claim because Schofield cannot establish that Maverik's reason for

termination was pretext for retaliatory motive.

FMLA retaliation claims are subject to the burden-shifting analysis of *McDonnell

Douglas Corp. v. Green*.[28]  To establish a prima facie case of retaliation under the FMLA,

Schofield must establish that she (1) engaged in a protected activity, (2) was subject to an

adverse employment action, and (3) a causal connection exists between the protected activity and

---

[27] Docket No. 27 Ex. V, at 4; Docket No. 34 Ex. 2, at 134.

[28] 411 U.S. 792 (1973).

the adverse action.[29]  After the plaintiff has made the requisite showing, the burden shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for its actions.[30]  "If the defendant

proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's

stated reasons are merely 'pretextual.'"[31]  Plaintiff can show pretext by showing that Defendant's

"proffered explanation is unworthy of credence"[32] or by showing "such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy

of credence."[33]

For purposes of this Motion, Defendant does not dispute that Plaintiff has made out a

prima facie claim of retaliation.  The burden therefore shifts to Maverik to articulate a

nondiscriminatory reason for firing Schofield.  Defendant has satisfied this burden by presenting

evidence that Schofield was terminated for excessive tardiness.

The burden therefore reverts to Plaintiff to show that Defendant's purported reason for

firing Schofield is pretextual.  The Court finds that Schofield has met this burden.  First, there is

the question of why Plaintiff was put on the schedule in the first place and why she was

threatened to be fired if she did not work her shifts.  Second, in almost three years of working at

Maverik, Schofield only received one written warning for tardiness, despite the parties'

acknowledgment that she was late to about 80% of her scheduled shifts from the time she began

---

[29] *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1220 (10th Cir. 2002).

[30] *McDonnell Douglas*, 411 U.S. at 804–05.

[31] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011).

[32] *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (citation and internal quotation marks omitted).

[33] *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1290 (10th Cir. 2007).

working there.  Third, Maverik's own coaching and corrective action policy supports Plaintiff's position that her tardiness was condoned because of the lack of corrective action throughout Plaintiff's tenure at Maverik.  Fourth, the same policy describes a final written warning as an opportunity for the employee and the employer to meet and discuss the seriousness of the problem such that "[i]f the behavior continues, the employee will be terminated."[34]  Plaintiff claims that she did not receive a final written warning but, even under Defendant's version of events, Schofield would have received the final written warning along with termination paperwork, leaving her with no opportunity to correct her behavior moving forward.

Defendant cites *Peterson v. Exide Technologies*[35] for its position that no procedural irregularities could justify a finding of pretext where defendant's disciplinary policy is discretionary, not mandatory.[36]  *Peterson* is distinguishable.  In *Peterson*, the plaintiff was terminated while on FMLA leave for injuries he suffered during a forklift accident.[37]  The accident investigation revealed that Plaintiff was travelling at an unsafe speed.[38]  The plaintiff's personnel file contained three written warnings for careless material handling, unauthorized use of machinery, and a health and safety violation.[39]  The plaintiff had previously driven a forklift into a stationary pole.[40]  Indeed, a month before his termination, the plaintiff had received a performance expectations memo noting he "[m]ust follow all safety rules at all times" and

---

[34] Docket No. 27 Ex. O, at 5.

[35] 477 F. App'x 474 (10th Cir. 2012) (unpublished).

[36] *Id.* at 478.

[37] *Id.* at 475.

[38] *Id.*

[39] *Id.*

[40] *Id.*

"[m]ust drive under control at all times, including maintaining a safe speed."[41]  His file also contained a note from his supervisor who completed the performance expectations memo explaining that the plaintiff had moved to a different department but had he stayed, the supervisor would have disqualified the plaintiff from material handling for failing to follow safety rules and failing to maintain a safe speed. [42]

In *Peterson*, the defendant's disciplinary policy maintained that "all disciplinary actions remain a permanent part of your file" even though the warning system started over each year. The policy also maintained that "[n]othing in this policy shall be deemed to limit the right of the company to terminate an employee at any time for any reason."[43]  While the plaintiff was able to establish a close temporal proximity between taking FMLA and being terminated, he could not "establish pretext without circumstantial evidence or retaliatory motive."[44]

Here, Plaintiff is not only able to establish close temporal proximity but has also provided the circumstantial evidence of pretext outlined above.  At issue is not whether Maverik could have terminated Plaintiff for excessive tardiness, but whether Maverik did in fact do so for that reason.  While Maverik's policy may also be discretionary, Plaintiff provided evidence that she had a pattern of being tardy that was often talked about but for which she was only written-up once.  Additionally, regardless of whether the coaching and corrective action policy was discretionary, both Fisco and Coleman believed Plaintiff needed three written warnings before

---

[41] *Id.*

[42] *Id.* at 476.

[43] *Id.*

[44] *Id.* at 479.

she could be terminated.[45]  Plaintiff also presented evidence that Fisco, at Coleman's direction, forged Schofield's final written warning after she was terminated because a Maverik representative visited the store seeking Schofield's personnel file.  According to Plaintiff, Coleman, believing three write-ups were required, told Fisco to create and back-date a final written warning to April 19, 2010.

The evidence that Defendant did not follow its usual process, along with Fisco and Coleman's acquiescence to Plaintiff's tardiness in the past, coupled with the evidence about a possible forged final written warning, and the close proximity between seeking leave and being terminated, provides enough circumstantial evidence for a reasonable jury to find that tardiness was not the true reason for Schofield's firing.  Therefore, a genuine issue of material fact exists as to whether Defendant's proffered reasons for its decision to end Plaintiff's employment were pretext for retaliation.

## C. TIME BAR

Defendant argues that Plaintiff's FMLA claims fail because they are time barred.  FMLA claims generally must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought" unless the plaintiff can establish a "willful" violation of FMLA, in which case the statute of limitations is three years.[46] In order for the three-year limitations period to apply, a plaintiff must demonstrate that his employer "knew or showed reckless disregard" for whether its conduct was prohibited by the

---

[45] Docket No. 27 Ex. V, at 4; Docket No. 34 Ex. 2, at 134.

[46] 29 U.S.C. § 2617(c).

FMLA.[47]  Willful "is generally understood to refer to conduct that is *not merely negligent*."[48]  If an employer acts reasonably or even "unreasonably, but not recklessly," in determining its obligations under the FMLA, its conduct is not willful."[49]

Defendant cites *McCully v. American Airlines*[50] for the premise that Defendant's conduct cannot constitute a willful violation of the FMLA when Defendant worked with Plaintiff to take non-FMLA time off after the assault.  *McCully* is distinguishable for at least two reasons.  First, in *McCully* the employer undisputedly gave the employee all the medical time off she requested.[51]  In the case at hand, Plaintiff represents that she sought time off and was told to contact Defendant when she was ready to return to work, yet was subsequently placed on the schedule and told that she would have to work her shifts or be terminated.  Second, in the case at hand, Schofield reported to two different supervisors, Fisco and Coleman.  Fisco, who was not trained in FMLA told Schofield to take as much time off as needed.  However, Coleman, who was trained in FMLA refused Schofield leave beyond the first weekend after the assault.

Under the FMLA, once an employee provides notice "sufficient to make the employer aware that the employee needs FMLA-qualifying leave," the "burden shifts to the employer to 'inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be

---

[47] *Bass v. Potter*, 522 F.3d 1098, 1104 (10th Cir. 2008).

[48] *Id.* at 1103 (quoting *Mclaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

[49] *Id.* at 1105 (quoting *McLaughlin*, 486 U.S. at 135 n.13).

[50] 695 F. Supp. 2d 1225 (N.D. Okla. 2010).

[51] *Id.* at 1233–34.

taken.'"[52]  Where, as here, the leave is unforeseeable, once the employee notifies the employer of the need for leave, it triggers an employer's obligation "to obtain any additional required information through informal means."[53]  "Thus, once the circumstances suggest that FMLA leave may be involved, the employer has an obligation to inquire further in order to ascertain the specific facts."[54]

Fisco did not inquire further of Schofield when she requested leave.  The record suggests that Schofield and Fisco were both unfamiliar with FMLA and did not know about the rights and obligations under FMLA.  However, Fisco informed Coleman of Schofield's assault and Coleman was trained in the FMLA.  Once informed, Coleman was required to inquire further to determine whether Schofield was eligible for FMLA leave.  Coleman did not inquire further. Whether Schofield's condition was FMLA-qualifying and whether Schofield's conversation with Fisco fulfilled her notice obligations under the FMLA are disputed issues of fact.

As for the retaliation claim, Defendant dismisses the unsigned final written warning as irrelevant because it argues that its coaching and corrective action policy is a discretionary one. While it is true that the policy may be a discretionary one, both Fisco and Coleman believed they were required to obtain multiple written warnings before terminating an employee for tardiness.[55]  The same evidence detailed above that supports the possibility of pretext also supports the possibility of willfulness.

---

[52] *Goodwin-Haulmark v. Menninger Clinic, Inc.*, 76 F. Supp. 2d 1235, 1241–42 (D. Kan. 1999) (quoting 29 C.F.R. § 825.302(c)) (detailing employee notice requirements for foreseeable FMLA leave).

[53] 29 C.F.R. § 825.303(b).

[54] *Williams v. Shenango, Inc.*, 986 F. Supp. 309, 320 (W.D. Penn. 1997).

[55] Docket No 27 Ex. V, at 4; Docket No 34 Ex 2, at 134.

If the jury finds this evidence to be credible, the jury could believe that Defendant knew or showed reckless disregard for whether its conduct was prohibited by the FMLA. In light of this evidence, whether Maverik's actions were willful is a factual question that is not properly reached at summary judgment.[56] Accordingly, Plaintiff's FMLA claims cannot be dismissed at this point as being time-barred.

D.    TITLE VII CLAIM

Plaintiff's third cause of action is for violations of Title VII. However, the Complaint does not make clear under what theories of liability Plaintiff endeavors to prevail. In her Complaint, Plaintiff alleges that she "was subject to harassment based on sex that was severe and pervasive."[57] Plaintiff also alleges that she "was subject to this hostile environment based on her gender."[58] She further alleges that she was "deprived of a workplace free of a sexually hostile environment, subjected to sexual harassment, and deprived of tangible employment benefits, including her termination."[59] The parties agree that Plaintiff pleaded a hostile work environment claim. Plaintiff claims, and Defendant disputes, that she has also pleaded an "adverse action claim."[60]

---

[56] *Ricco v. Potter*, 377 F.3d 599, 602–03 (6th Cir. 2004) ("An employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements; therefore, the determination of willfulness involves a factual question.").

[57] Docket No. 3, at 9.

[58] *Id.*

[59] *Id.*

[60] Docket No. 33, at 43–53.

*1.      Hostile Work Environment*

In evaluating a hostile work environment claim, the Court considers the work atmosphere both objectively and subjectively[61] while keeping in mind that Title VII is not "a general civility code for the American workplace."[62]  To that end, "run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."[63]  The United States Supreme Court "ha[s] made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."[64]  These standards are "sufficiently demanding" to ensure that they "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[65]

For Plaintiff's hostile work environment claim to survive summary judgment the plaintiff must (1) be a member of a protected group, (2) be subject to severe and pervasive unwelcome harassment, (3) that is based on sex, and (4) alters the conditions of her employment.[66]  The harassment's severity and pervasiveness are "evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its

---

[61] *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998).

[62] *Oncale v. Sundowner Offshore Servs., Inc.*,  523 U.S. 75, 80 (1998).

[63] *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012).

[64] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation and internal quotation marks omitted).

[65] *Id.*

[66] *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007).

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[67]

A review of the record in this case demonstrates that there is some evidence to suggest that Coleman received pornographic emails or text messages while at work and that Coleman instructed Fisco to make certain marks on job applications that were from women and minorities. However, there is no evidence to suggest that Plaintiff was aware of such practices. Additionally, on one occasion, Coleman referred to Schofield as "white trash" and, on another occasion, he told her to move her "fat ass." The comments directed at Schofield are not facially sex-based. In addition, Schofield heard Coleman refer to other female employees as a "hag," and a "slut."[68] Once, Schofield heard Coleman say "it smells like fish" when he had to get down on the floor next to a female employee.[69] Finally, Schofield in a declaration attested that she also heard Coleman use the terms "ho," "kitchen bitches," and "lesbo," although she cannot remember the exact times or to whom the comments were said. Nor was Schofield able to recall these incidents during her deposition.

There is no dispute that Plaintiff is a member of a protected group or that Plaintiff found the harassment she faced to be unwelcome. Many of the derogatory comments Schofield describes are not facially sex-based. Even if the Court accepts the comments made to Plaintiff as sex-based when considering the totality of the circumstances,[70] Plaintiff's hostile work

---

[67] *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (citations and internal quotation marks omitted).

[68] Docket No. 34 Ex. 4, at 97.

[69] *Id.*

[70] *Chavez*, 397 F.3d at 833 (finding that facially neutral abusive conduct can support a finding of gender animus when considering the totality of the circumstances).

environment claim still fails because, taken as a whole, the comments are not sufficiently severe and pervasive to support a Title VII claim.

Courts routinely decline to find a hostile work environment based on harassment far more frequent and more hostile than the incidents that Schofield faced.[71]  The isolated incidents that Plaintiff describes do not give rise to a workplace that was "permeated with discriminatory intimidation, ridicule, and insult."[72]  Nor did Plaintiff face a physically threatening environment. Finally, there is no evidence that these offensive utterances unreasonably interfered with Plaintiff's work performance.

In short, while the Court does not condone the sophomoric language in which Coleman engaged, the conduct at issue is not actionable under Title VII.[73]  Therefore, the Court finds that Plaintiff's hostile work environment claim fails as a matter of law.

### 2.    *Discrimination*

Finally, Plaintiff claims to have pleaded an "adverse action claim," which the Court construes as a gender discrimination claim.  Defendant disputes such a claim is adequately pleaded.

---

[71] *See, e.g.*, *Vasquez v. Trinity Mission Health*, 2013 WL 4095157, at *4–5 (D. Utah Aug. 13, 2013) (granting summary judgment on hostile work environment claim on evidence that the supervisor made sexual comments in meetings, talked down to female department managers, rolled his eyes when female managers spoke, told the plaintiff that if she could not balance her work and home life she should be a stay-at-home mom, and threatened to fire her if her children continued to get sick); *Ebert v. Lamar Truck Plaza*, 715 F. Supp. 1496, 1499 (D. Colo. 1987), *aff'd*, 878 F.2d 338 (10th Cir. 1989) (affirming grant of summary judgment despite evidence that employee was exposed to vulgarities, offensive gesturing and touching, and later discharged).

[72] *Kline v. Utah Antidiscrimination & Labor Div.*, 418 F. App'x 774, 781 (10th Cir. 2011) (unpublished) (citation omitted).

[73] *See Penry*, 155 F.3d at 1261 (holding that "[w]hile we obviously do not condone such activity, two inappropriate jokes and a few overheard comments which contained sexual innuendo are not severe or pervasive enough to create a hostile work environment.").

The purposes of the modern complaint is twofold, "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief."[74] With these purposes in mind and upon a close inspection of the pleadings, the Court finds that Plaintiff has not pleaded such a claim.

Under her Title VII cause of action Plaintiff alleges only that she "was subject to harassment based on sex that was severe and pervasive,"[75] "was subject to this hostile environment based on her gender,"[76] and was "deprived of a workplace free of a sexually hostile environment, subjected to sexual harassment, and deprived of tangible employment benefits, including her termination."[77] The Court finds the facts alleged in Plaintiff's Complaint do not suggest a separate Title VII claim. Plaintiff pleaded her FMLA claims under two separate headings entitled FMLA interference and FMLA retaliation. Yet Plaintiff does not separate out the Title VII claim. Based on these allegations, Defendant cannot be said to have proper notice of anything but a hostile work environment claim.

Nor is this a case in which Federal Rule of Civil Procedure 15(b) would apply. Rule 15(b) provides that "[w]hen an issue not raised in the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Defendant has not consented to the claim. Indeed, Defendant did not even raise the issue in its summary

---

[74] *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir. 1979).

[75] Docket No. 3, at 9.

[76] *Id.*

[77] *Id.*

judgment motion.  The evidence at hand does not support amending the pleadings to plead a heretofore unpleaded cause of action.

The failure to plead a Title VII gender discrimination claim appears to be an oversight by Plaintiff's counsel.  The Court notes that Plaintiff's charge of discrimination filed with the Utah Antidiscrimination & Labor Division states, "I believe that I was . . . terminated because of my gender in violation of Title VII of the Civil Rights Act of 1964."[78]  Therefore, Plaintiff's counsel should have been on notice of a potential Title VII termination claim.

Alone, this may not be significant, but the Court also notes that the parties entered into a tolling agreement where Maverik agreed that it would not assert statute of limitations defenses to claims brought by May 20, 2012.[79]  Plaintiff, however, did not file this lawsuit until May 25, 2012, allowing Maverik to assert the statute of limitations defenses discussed above.  As a result of the late filing, Plaintiff must now establish a willful violation of the FMLA.  Both of these failures appear to be the result of an oversight by Plaintiff's counsel.

## IV.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 26) is GRANTED IN PART AND DENIED IN PART.

Under separate order, the above-entitled matter will be referred to a Magistrate Judge to conduct a settlement conference pursuant to DUCivR 16-3(b).

---

[78] Docket No. 27 Ex. P, at 1.

[79] *Id.* Ex. R, at 1.

DATED this 18th day of June, 2014.

BY THE COURT:

_____

Ted Stewart
United States District Judge